**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 11-cv-01020-MSK-CBS

JACKLYN JONES,

       Plaintiff,

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, a New Jersey Insurance Company,

       Defendant.

_____

**OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's ("Prudential") Amended Motion for Summary Judgment **(# 33)**,[1] Ms. Jones' response **(# 36)**, and Prudential's reply **(# 42)**.

## FACTS

The relevant facts are relatively uncomplicated, and to the extent they are disputed, the Court construes the evidence presented most favorably to the non-movant, Ms. Jones.

From 1987 until 2006, William Jones, the husband of the Plaintiff, was the insured under a policy of life insurance issued by Metropolitan Life Insurance Company ("Met Life"). Ms. Jones, the Plaintiff, was the beneficiary of that policy. The policy was a "universal life"type, for which the owner paid premiums to cover the cost of standard insurance and could build up an additional cash value in the policy by making periodic investments (by remitting amounts in

---

[1]This motion renders Prudential's original Motion for Summary Judgment **(# 32)** moot.

excess of the premiums) into a "contract fund" that earned a specified rate of interest. The contract fund value became part of the benefit to be paid to the owner if the policy was terminated or to the beneficiary on the death of the insured. Although Ms. Jones speculates to the contrary, the evidence in the record indicates that Mr. Jones never accumulated more than a few hundred dollars in the contract fund.

In 2006, Prudential acquired the policy from Met Life. At that time, Prudential provided Mr. Jones with a statement noting the amount of his insurance and that the contract fund balance was approximately $ 246. Mr. Jones did not dispute this amount. He continued making payments on the policy until February 2007, but ceased making payments after that date. Prudential provided him notice of the non-payments, but to no avail. As a result, on May 1, 2007, Prudential terminated the policy.

Mr. Jones passed away in March 2009. Some time thereafter, Ms. Jones made a demand on Prudential for benefits under the policy. Prudential advised Ms. Jones that the policy had lapsed and thus, no benefits were payable. Ms. Jones then commenced this suit. Her Complaint **(# 2)** alleges three claims for relief: (i) breach of insurance contract, apparently under Colorado law, (ii) bad faith breach of insurance contract, and (iii) failure to pay benefits due in violation of C.R.S. § 10-3-1115 and -1116.

Prudential moves **(# 33)** for summary judgment on all three claims, contending that the undisputed facts demonstrate that it has no contractual liability to Ms. Jones.

## ANALYSIS

### A. Summary judgment standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, the claim or defense must be dismissed as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B. Prudential's motion

Extensive discussion of the elements of Ms. Jones' claims or the applicable burdens of proof is largely unnecessary. It is undisputed that an essential element that Ms. Jones must prove in conjunction with each of her claims is that the policy was in force at the time he died. This means that either that payments were made according to the contract's terms, or that such payments were excused.

It is undisputed that Mr. Jones did not make any premium payments after February 2007 and that he died in 2009. Thus, the questions presented are 1) whether there is a legal basis for excusing Mr. Jones' obligation to make timely premium payments; and, if not, whether Prudential should have made make payments for him.

Ms. Jones makes several arguments. She first contends that Mr. Jones was excused from having to make such payments because he had Alzheimer's Disease during the relevant time period. That Mr. Jones was afflicted by such a dreadful disease, the Court treats as true. But the significance of that fact from a legal perspective is somewhat unclear. Ms. Jones does not allege, for example, that Prudential was aware of Mr. Jones' condition and waived payment, that the contract excused payment under such circumstances or that she or anybody else had contacted Prudential and requested that premium notices be sent to a guardian or conservator authorized to act on Mr. Jones' behalf. The fact of Mr. Jones' suffered from cognitive diminution at or about the time he ceased making premium payments might **explain** why those

payments ceased, but Ms. Jones has offered neither argument nor authority for the proposition that his mental condition **excused** his contractual obligation to make payments on the policy.

Next, Ms. Jones argues that Prudential was obligated to apply the contents of the contract fund to make past-due premium payments. This argument is unpersuasive for several reasons.

First, Ms. Jones fails to demonstrate that, under the terms of the policy, contract fund balances could be used to pay premiums due (much less that Prudential had an obligation to tap the contract fund to pay the past-due premiums for Mr. Jones).[2]

Second, assuming that the policy contained a provision allowing Prudential to recoup unpaid premiums from the contract fund, Ms. Jones has not alleged that he (or she) ever requested Prudential to do so. Ms. Jones is left to argue that Prudential was obligated to deplete the contract fund to make premium payments to continue the policy, but Ms. Jones points to neither contract language nor precedent that creates such an obligation on Prudential's part.

Finally, assuming that Ms. Jones is correct and Prudential had an obligation to tap the contract fund to make Mr. Jones' unpaid premium payments beginning in February 2007, Prudential has proffered unrebutted evidence that the balance in Mr. Jones' contract fund at the

---

[2] In support of the contention that Prudential **could** have done so, she relies on two cases that are inapposite. *Berkshire Settlements, Inc. v. Ashkenazi*, 2011 U.S. Dist. LEXIS 136663 n. 3 (E.D.N.Y. Nov. 29, 2011), mentions "broadly" that universal life policies accumulate a "cash value . . . which bears interest and may be borrowed against or, in some circumstances, withdrawn." The case says nothing about either the insured or the insurer tapping the cash value to pay premiums. The other case, *In Re Dowden*, 143 B.R. 388, 394 (Bankr. W.D. La. 1989), involved certain technical issues relating to a bankrupt debtor's offer to surrender a universal life policy to creditors as part of a reorganization plan. The court mentioned, in passing, that the insurance agent who worked with the debtors to obtain the policy testified that the policy "uses accumulated 'cash value' to pay premiums." *Id.* at 394. (The court went on to observe that the cash value of the policy was only a few thousand dollars, and the policy was on the verge of default for non-payment of premiums, making the policy's value to creditors negligible.) At best, then, *Dowden* offers only a glimpse into a salient feature of **that** policy, not necessarily a global truth that **all** universal life policies permit cash values to be tapped to pay premiums

time its lapse was only about $ 245, less than the cost of a single month's premium payment of $251.  Thus, even if Prudential had depleted the contract fund to sustain the policy, the policy would have lapsed due to non-payment well before Mr. Jones' passing in 2009.[3]

Ms. Jones offers some conceptual objections to this final point.  She contends that Prudential's accounting for the value of Mr. Jones' policy, both as to the balance of the contract fund and the amounts of supplemental payments made by Mr. Jones, is deficient.  She contends that records showing Mr. Jones' monthly payments and account balances "mostly do not exist." Prudential, however, has produced a wealth of records in conjunction with its reply brief that substantiate its calculation of that fund's balances.

Although the Court construes evidence most favorably to a nonmovant, in this case there is no evidence contrary to that submitted by Prudential. [4] Ms. Jones has not come forward with any contrary evidence – *e.g.* cancelled checks or bank statements showing payments higher than those recorded by Prudential or an accounting of the contract fund or payments that differs from Prudential's accounting.[5]  Ms. Jones offers only her belief that Prudential's figures are

---

[3]The Court does not understand Ms. Jones to contend that, upon terminating the policy in 2007, Prudential failed to disburse whatever disbursable sums remained in the contract fund. Arguably, if Mr. Jones had a few hundred dollars in cash value in the policy, and the policy language provided for the return of the cash value amount upon termination of the policy, Prudential was contractually obligated to do so.  Nevertheless, in the absence of a clear argument that this forms a separate alleged breach, the Court will assume that the crux of Mr. Jones' claims is for the policy value of the death benefit, not simply for return of the few hundred dollars in the contract fund at the time of policy termination.

[4]Although Prudential probably should have produced this material as part of its motion, rather than in a reply brief, *see e.g.* Fed. R. Civ. P. 56(c)(1) (requiring movant to "cit[e] to particular parts of materials in the record" establishing its contentions), Ms. Jones did not thereafter request leave to file a sur-reply or otherwise address the materials Prudential submitted.

[5]Ms. Jones submitted an expert report of John Kezer containing an opinion that "neither Met Life or Prudential have satisfied their accounting and reporting obligations to Ms. or Mrs.

inaccurate.

Once a summary judgment movant has come forward with evidence that facially establishes a particular fact, the non-movant "may not rest upon the mere allegations or denials of his pleadings to avoid summary judgment." *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999). Rather, she must come forward with contrary evidence that "presents a sufficient disagreement to require submission to a jury." *Id.* at 1098. By failing to adduce any **evidence** that contradicts Prudential's accounting, Ms. Jones has not carried the burden required of her as a party opposing a properly-supported summary judgment motion.

The Court finds that there is no genuine dispute of fact with regard to the question of whether Mr. Jones failed to make premium payments necessary to keep the policy in force until the time of his death in 2009. The evidence is undisputed that Mr. Jones did not perform his obligations under the terms of the insurance contract, Prudential did not breach the contract by failing to pay benefits to Ms. Jones.

## **CONCLUSION**

For the foregoing reasons, Prudential's Amended Motion for Summary Judgment **(# 33)** is **GRANTED**. The Clerk of the Court shall issue judgment in favor of Prudential on the claims herein including an award of costs and shall thereafter close this case. Prudential's original

---

Jones as required under the policy . . or as required by law or regulation." Taking this statement as true, the failure to provide an accurate or timely accounting in the past does not make the currently submitted accounting incorrect.

The parties did not argue, but one might question whether a failure on the part of Prudential to provide a timely or accurate accounting would give rise to an independent breach of contract. Were that the case, however, the measure of damages arising from the breach would not likely equate to the benefits under the policy unless the requisite premium payments had been made.

Motion for Summary Judgment **(# 32)** is **DENIED AS MOOT**.

Dated this 6th day of September, 2012

**BY THE COURT:**

_____

Marcia S. Krieger
United States District Judge